Conley v. State.

---

DOUGLAS S. CONLEY V. STATE OF NEBRASKA.

FILED OCTOBER 15, 1895.   No. 7446.

46   187
62   445n

1. Sheriffs: CONVERSION: EMBEZZLEMENT.   A sheriff is an officer elected to an office of public trust in this state, and for the conversion to his own use of any moneys that shall come into his hands by virtue of his office may be prosecuted for embezzlement under section 121 of the Criminal Code.

2. ——: ——: ——: INFORMATION.   Where a sheriff by virtue of an order of sale issued upon a decree of foreclosure had sold the lands therein described and collected the amount of the bid of the purchaser, which, before an order of the court directing to whom it should be paid out had been made, he had converted to his own use, it was not essential in an information against such officer to allege to whom such money belonged, and an allegation of that kind should be rejected as surplusage when the information independently of such allegation fully stated the facts above indicated.

ERROR to the district court for Phelps county.   Tried below before BEALL, J.

*J. L. McPheely, Hall, St. Clair & Roberts,* and *F. G.*

*Hamer*, for plaintiff in error, cited: *People v. Allen*, 5 Den. [N. Y.], 76; *Stoker v. People*, 114 Ill., 320; *State v. Denton*, 22 Atl. Rep. [Md.], 305; *Doyle v. Alderman of Raleigh*, 45 Am. Rep. [N. Car.], 677; *Worthy v. Barrett*, 63 N. Car., 199; *Eliason v. Coleman*, 86 N. Car., 235; *State v. Stanley*, 8 Am. Rep. [N. Car.], 488; *Walker v. City of Cincinnati*, 21 O. St., 14; *Braithwaite v. State*, 28 Neb., 835; *Burke v. State*, 34 O. St., 79; *Lightner v. Steinagel*, 33 Ill., 513; *Reg. v. Gibbs*, Dears [Eng.], 445; *State v. Foster*, 11 Ia., 291; *Rex v. Mason*, Dowl. & R. N. P. [Eng.], 22; *Rex v. Barker*, Dowl. & R. N. P. [Eng.], 19; *Reg. v. Glover*, Leigh & C. [Eng.], 466; *Reg. v. Fletcher*, Leigh & C. [Eng.], 180; *Reg. v. Hastie*, Leigh & C. [Eng.], 269; *Rex v. Hodgson*, 3 C. & P. [Eng.], 422; *State v. Butler*, 5 Am. Crim. L. [S. Car.], 207; *Snapp v. Commonwealth*, 6 Am. Crim. L. [Ky.], 189.

*A. S. Churchill, Attorney General*, and *George A. Day, Deputy Attorney General*, for the state, cited: *Doyle v. Alderman of Raleigh*, 89 N. Car., 133; *People v. Bedell*, 2 Hill [N. Y.], 196; *Vaughn v. English*, 8 Cal., 41; *In re Corliss*, 11 R. I., 638; *State v. Brooks*, 42 Tex., 63; *Ogden v. Raymond*, 22 Conn., 379; *State v. Anderson*, 45 O. St., 196; *Commonwealth v. Tuckerman*, 76 Mass., 173; *State v. Tompkins*, 32 La. Ann., 620; *Commonwealth v. Ricketson*, 5 Met. [Mass.], 412; *Taylor v. Shemwell*, 4 B. Mon. [Ky.], 575; *McDowell v. Crawford*, 11 Gratt. [Va.], 377; *Hess v. Wilcox*, 58 Ia., 380; *Tierney v. Spiva*, 76 Mo., 279; *Ruggles v. Coffin*, 70 Me., 468; *Breedlove v. Bundy*, 96 Ind., 319; *Fisher v. State*, 40 N. J. Law, 169.

*A. J. Shafer*, also for the state.

RYAN, C.

The plaintiff in error was convicted of embezzlement in the district court of Phelps county. There were three counts in the information, but as the verdict of guilty referred

only to the offense described in the last count, this alone need be considered. In this count it was charged that Douglas S. Conley, at all times referred to, was the sheriff of the aforesaid county; that said office of sheriff was one of public trust; that said Conley on August 16, 1893, as sheriff, made and conducted a sale of the northwest quarter of section 30, in town 5 north, of range 19 west, 6th P. M., the said land being in Phelps county, by virtue of an order of sale issued and directed to him as such sheriff in an action of foreclosure of mortgage had by the Colonial & United States Mortgage Company (Limited) against Charles A. Draws and others; that as such sheriff and public officer, and by virtue of his said office of public trust, he received $667, the amount bidden on the sale. The embezzlement charged was the unlawful conversion of the sum above mentioned by said sheriff to his own use without the consent of the mortgage company aforesaid.

The facts above charged were unquestionably established by the evidence. It is contended on behalf of the plaintiff in error, however, that in the information there was no averment, and by the evidence no proof that the mortgage company was a corporation. It is furthermore insisted that since by the information, in addition to the averments already noted, it was charged that the money misappropriated belonged to the mortgage company above described, the conviction cannot be sustained, for the reason that the proofs merely showed that the amount of the bid was paid into the sheriff's hands, and that, at least until ordered paid to said mortgage company, that company had no ownership of it. There was a confirmation of the foreclosure sale, but there has been no order to pay the proceeds of the sale to any one. The sale by foreclosure is regarded as a sale by the court itself, conducted by means of its executive officer, the sheriff, liable as such, or by some other person thereto authorized by the court. (Code of Civil Procedure, sec. 852.) In case of a refusal to pay the amount of his bid a

purchaser may be compelled to complete his purchase by
such payment. (*Gregory v. Tingley*, 18 Neb., 318; *State v.
Holliday*, 35 Neb., 327.)   By section 854, Code of Civil
Procedure, it is provided that "the proceeds of every sale
made under a decree in chancery shall be applied to the dis-
charge of the debt adjudged by such court to be due, and of
the costs awarded, and if there be any surplus, it shall be
brought into court for the use of the defendant, or of the
person entitled thereto, subject to the order of the court."
The clause last quoted applies not merely to the surplus but
to the entire proceeds of the sale, which, therefore, are "sub-
ject to the order of the court," until paid out.   In the case
at bar it was shown that by the decree of foreclosure there
had been adjudged due to the Colonial & United States
Mortgage Company the sum of $781.45.   For the pay-
ment of this sum with interest and costs a sale was directed,
and the return of the sheriff upon the order of sale issued
under this decree recited that after payment of costs there
was applicable to the judgment the sum of $600.28.   Until
this return was approved by the court this money in strict-
ness would not belong to the foreclosure plaintiff.  The
information supported by the proofs showed fully how the
money was realized and in what situation it was when mis-
appropriated.   The conclusion of the county attorney that
the money belonged to the mortgage company, superadded
to the essential facts set out in the information, was merely
surplusage and may therefore be ignored.   If required to
allege correctly who would be entitled to the money when
the court should direct its distribution, the county attorney,
in a case like that under consideration, would have been re-
quired to state not only all existing facts, but in effect, an-
ticipating the future, would be required to state what order
the court would have made had the money in the meantime
not been misappropriated.   The law does not require a vain
thing, and this, if a requirement, would amount to nothing
less.   If there was no requirement of mention of owner-

ship as above indicated, there was no necessity that by the
information or proofs should be described the corporate
capacity of one whose ownership was not, required to be
shown. That part of section 121 of the Criminal Code
which is essential in this case is in this language : "If any
officer elected or appointed to any office of public trust in
the state  *  *  *  shall embezzle or convert to his or
her own use any money, property, rights in action, or other
valuable security or effects whatever, belonging to any in-
dividual, or company, or association, that shall come into
his or her possession by virtue or under color of his or her
relation as officer,  *  *  *  every such person so offend-
ing shall be punished in the manner provided by law for
feloniously stealing property of the value of the article so
embezzled."

It is urged that the sheriff, in conducting the sale which
he did, and afterwards acting as custodian of the moneys
realized, was not acting as an officer elected to an office of
public trust. In support of this position several adjudged
cases have been cited with great apparent confidence. Of
these we shall notice such as in oral argument were spe-
cially relied upon, and from their similarity to each other
it may readily be inferred upon what lines all the cited
cases were determined. The case more relied upon than
any other was *Stoker v. People,* 114 Ill., 320. In that case
an indictment had been found against Stoker, a constable,
who, by virtue of certain executions in favor of Aultman,
Miller & Co. entrusted to him as such officer, had collected
over $200 which he had failed to pay over. The section
of the statute under which this prosecution was had pro-
vided : "Whoever embezzles or fraudulently converts to
his own use  *  *  *  money, goods,  *  *  *  deliv-
ered to him which may be the subject of larceny, or any
part thereof, shall be deemed guilty of larceny." The
court held that no conviction should have been had under
the provisions of this section, for the reason that it was

general in its terms and did not contain the word "constable," whereas, in section 79 of the same chapter, in which the section quoted is found, there was express mention of constables in connection with a different definition of embezzlement. *People v. Allen,* 5 Den. [N. Y.], 76, is also a favorite citation of the plaintiff in error. In that case Snyder had employed Allen, a constable, to collect several bills due him. This constable was authorized to take out summonses before a justice of the peace named and go with them and demand payments. If the demand was paid, process was not to be served, but if not, service was to be made and Allen was then to appear for Snyder and obtain judgment. Daniel Darrow paid one of these bills against him on presentation; nevertheless, without service of process, Allen procured a judgment against him in favor of Snyder. The indictment of Allen was for embezzling the amount he, as an agent of Snyder, had collected of Darrow. In the supreme court it was held that as the statute limited the term "embezzlement" to clerks and servants, an indictment which charged that the misappropriation was by an agent was bad. In *State v. Denton,* 22 Atl. Rep. [Md.], 305, the indictment of clerk of the board of county commissioners as a public officer was held bad for the reason that such clerk was appointed under a statute which provided: "The county commissioners of each county in this state are declared to be a corporation and shall have full power to appoint * * * road supervisors, collectors of taxes, trustees of the poor, a clerk to their board, and all other officers, agents, and servants required for county purposes." There is no argument necessary to show how inapplicable these adjudications are to the facts of the case which we have under consideration. A further review of citations would but serve to present for consideration other cases equally foreign to our inquiry. It admits of no question that a sheriff is a public officer; that is, one who has a duty to perform concerning the public, as defined in *Hill v. Boy-*

*land,* 40 Miss., 625.  He is equally to be so regarded under the definition given in *Bunn v. People,* 45 Ill., 400, that, "Every man is a public officer who hath any duty concerning the public; and he is not the less a public officer when his authority is confined to narrow limits, because it is the duty and nature of that duty which make him a public officer and not the extent of his authority."  Of like applicability is this definition in *Bradford v. Justices' Inferior Court,* 33 Ga., 336, to-wit: "Where an individual has been appointed or elected in a manner prescribed by law, has a designation or title given him by law,  *  *  *  he must be regarded as a public officer."  The language of section 121, Criminal Code, is "if any person elected or appointed to any office of public trust, etc."  This is, in effect, if any public officer; for, in *Matter of Daniel Wood,* 1 Hopk. Ch. [N. Y.], 8, it was said: "The words 'public trust,' still more comprehensive, appear to include every agency in which the public, reposing special confidence in particular persons, appoint them for the performance of some duty or service."  It has already been noted that the plaintiff in error when he misappropriated the funds in his hands was acting as sheriff.  By virtue of his office of public trust he obtained and appropriated to his own use this money, is but a concise and accurate description of his offense which is clearly within the terms of the statute under which he was convicted.

It is complained that one of the jurors had expressed an unqualified opinion as to the guilt of Conley before he was called into the box.  We have considered fully this complaint, and our conclusion is that there exists no ground for this contention.  The proofs submitted on this point show that just before the juror was called he said he hoped he would not be required to serve in this case.  When asked how he would avoid it when called, he said that he would tell them that he would send the prisoner up for life, so that he, the juror, would get off the jury.  This was not

the expression of an opinion. It was but an excuse which he said that he would present to avoid being compelled to serve. This juror, on oath, said that this was spoken in jest, merely, and this we are inclined to believe, for in his *voir dire* examination submitted for our consideration no such language occurs.

There is no question presented or argued which has not been already discussed, and there being found no error in the record the judgment of the district court is

AFFIRMED.